No. 35,247

JAMES W. HANNERS, *Appellee*, v. THE CITY OF KANSAS CITY, *Appellant.*

(118 P. 2d 532)

Opinion filed November 8, 1941.

*Alton H. Skinner, Edwin A. Schalker, Elmer Jackson, Wm. H. Towers, Joseph Lynch* and *James H. Barnes,* all of Kansas City, for the appellant.

*Joseph H. Brady* and *John K. Dear,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action for damages inflicted by an alleged mob, and from a judgment against it the defendant city appeals. Although the appellant specifies error in six particulars, we need notice but one—that the trial court erred in overruling its demurrer to plaintiff's evidence, for we think it conclusive of the appeal.

For our purpose we shall assume the petition stated a cause of action under the statute making the city liable for damages that may accrue for injury to life or limb in consequence of the action of a mob within its corporate limits (G. S. 1935, 12-201), and that upon trial the opening statement of plaintiff was fully sufficient. The question is whether the evidence disclosed there was a mob which caused the plaintiff's injuries, and our statement is therefore limited to the evidence bearing on that question.

Prior to January 12, 1938, plaintiff and one Hawkins lived in Kansas City, Kan., but were both employed in an industrial plant in Kansas City, Mo. About 6 a. m. on the morning of January 12, Hawkins, driving his automobile, stopped at the home of plaintiff on Ferree street a little north of 37th street. Plaintiff entered the automobile and they started on south, but as they neared the intersection, another automobile, running without lights, came from the west on 37th street and blocked the automobile in which plaintiff

was riding from proceeding. About the time plaintiff's car was being stopped, there were shots from the other car and two bullets hit the car in which plaintiff was riding. At the same time two men came from the east side of the street and two men came from the west, and two men got out of the car from which the shots came. At least two of these men were armed. Plaintiff and Hawkins were taken out of their car and severely beaten. During the course of the beating there was loud talk, threats and cursing. Hawkins testified it was about a minute from the time the first shot was fired until the assailants left. Mr. and Mrs. Bell, who lived at the intersection, and near whose house the altercation took place, were awakened by the shots and the shouting and cursing that followed. Mr. Bell went downstairs to call the police, but in turning on his electric lights, without so intending, he turned on a large light on his porch. When this happened, plaintiff's assailants fled. Mr. and Mrs. Bell testified it was not over three minutes from the time they heard the shots until the men fled. In a written statement made January 12, Hawkins stated that after the assault he went to the Bell home to call the police and the lady told him the police had been called and they came in two or three minutes thereafter.

In the briefs of appellant and appellee, reference is made to many of our decisions where the act making cities responsible for damages by mobs was under consideration. A review of many of these decisions was made in *Koska v. Kansas City,* 123 Kan. 362, 255 Pac. 57, where the question arose on the sufficiency of the pleadings and opening statement. The question was again before this court in *Maus v. City of Salina,* 154 Kan. 38, 114 P. 2d 808, and arose on the sufficiency of the petition. The last case was decided after the ruling now complained of was made. In the Maus case, a review of some of our decisions was made, and the meaning to be given the word "mob" was discussed, it being said:

"What, then, is the popular understanding of the meaning of the word? It is perhaps impossible to fix exactly, by definition, the 'four corners' of the term, but its substantial content is well enough understood. When we think of a mob we instinctively visualize an assemblage of persons excited or incited to violent action, having thrown restraint to the winds, reckless and headlong in their unlawful designs, determined to brook no opposition to their common purpose, and ordinarily characterized by noisy and riotous disturbance of the public peace and order. Or, we think of a frenzied group, defiant of the orderly processes of punishment, moving in concerted action to wrest some alleged culprit from lawful custody and wreak vengeance upon him.

Perhaps not every characteristic, above enumerated, is present in every particular instance, but such is the general substance of the term as popularly understood. In the Koska case will be found collected various definitions from standard authorities, which need not be here repeated, but which are in line with what has here been said." (l. c. 41.)

After discussing the history and purposes of the act it was said:

"It is not reasonable to believe that it was the legislative intent to impose such liability for every crime committed by a number of persons acting in concert." (l. c. 42.)

When we apply the definitions and reasoning of the above cases to the facts in the case now before us, we notice first that the whole affair was over in three minutes. Prior to the time the first shot was fired there had been no noise of any kind, let alone riotous or tumultuous conduct. There may have been disorder while the assault was being perpetrated, but there was none before it started. The only persons testifying as to loud noise and boisterous conduct that might be denominated as tumultuous and riotous, aside from plaintiff and his companion, were Mr. and Mrs. Bell, and their testimony, as well as that of plaintiff and his companion, shows only noise, etc., immediately connected with the assault. Of course the assault was a violation of the criminal laws, but it cannot be said there was a general disturbance of the peace. There was no excited, turbulent group of five or more people pursuing its headlong way in reckless defiance of the law and without regard for the safety of persons or property in its path; had a squad of police passed the corner fifteen seconds before plaintiff and his companion reached there, all they would have seen was an automobile and they would have not heard any unseemly noise. So far as the evidence goes, the neighborhood and the place where the assault occurred was peaceful and quiet prior to the assault. The factual situation disclosed was not one contemplated by the statutes making the city liable for damages inflicted by a mob, and the trial court erred in not sustaining defendant's demurrer to plaintiff's evidence.

The judgment of the trial court is reversed and the cause remanded with instructions to sustain the demurrer.