No. 39,120

HARRY J. LEE, *Appellant,* v. THE CITY OF KANSAS CITY, KANSAS, *Appellee.*

(267 P. 2d 931)

Opinion filed March 6, 1954.

*Alan W. Farley,* of Kansas City, argued the cause and *William H. McCamish,* of Kansas City, was with him on the briefs for the appellant.

*William H. Towers,* deputy city attorney, argued the cause, and *C. W. Brenneisen, Jr.,* city attorney, *James J. Lysaught,* deputy city attorney, and *John J. Ziegelmeyer,* deputy city attorney, all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action by a father against a city to recover

damages for the death of his son, on the theory that his son had been killed by a mob. Defendant's demurrer to the plaintiff's evidence was sustained. The plaintiff has appealed.

After the formal allegations, the petition alleged immediately preceding his death Henry David Lee was proceeding quietly toward his home on his motorcycle and he was set upon by eight officers of the city, who had come together for the purpose of arresting deceased and restraining him of his liberty or killing him; that they had no warrant for his arrest and had not seen him commit any public offense; that the officers on the approach of deceased, in an excited, turbulent manner and in defiance of the orderly processes of law, immediately began shouting, starting their motor cars, throwing bright lights and firing revolvers at and around deceased; put him to flight; pursued him; keeping up their din and shooting; and finally shot deceased in the back, killing him. The petition then contained an allegation as follows:

"Plaintiff further states that by reason of the acts and conduct of said police officers they constituted a mob, and that the death of said Henry David Lee resulted from such mob violence."

The city in its answer first made a general denial, then alleged that it maintained a large police force to maintain order in the city, described what it called a gang fight that had occurred in the city on the night in question; that deceased was in the fight; that he fled when officers attempted to arrest him; that subsequently deceased was seen by an officer on a motorcycle in the vicinity; that deceased would not stop when ordered to do so; and one officer fired warning shots, one of which struck the pavement, ricocheted and struck defendant, killing him; that the officers did not constitute a mob, but were acting within the provisions of the law, particularly G. S. 1949, 62-1204, which provided, among other things, the following:

"If after notice of the intention to arrest the defendant he either flee or forcibly resist, the officer may use all necessary means to effect the arrest."

In his reply plaintiff alleged the police officers had abandoned their duties to protect the life of deceased and were engaged in an unlawful attempt to arrest deceased, and had become a mob.

At the conclusion of plaintiff's evidence defendant's demurrer to it was sustained. Hence this appeal.

The only specification of error is that the court erred in sustaining defendant's demurrer.

This compels an examination of plaintiff's evidence in connection with the law. At the outset plaintiff refers to the rule so often announced by us in considering a demurrer to the evidence:

"In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true; shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and disregard that unfavorable to plaintiff; and shall not weigh any part that is contradictory, nor weigh any differences between his direct and cross-examination. And if, so considered, there is any evidence which sustains the plaintiff's case, the demurrer should be overruled."

(See *Fry v. Cadle*, 171 Kan. 14, 229 P. 2d 724.)

We shall follow that rule here.

Liability in this case was based on a statute, G. S. 1949, 12-201. Without it there would have been no liability against the city. That section provides as follows:

"Liability; what constitutes mob. All incorporated cities and towns shall be liable for all damages that may occur in consequence of the action of mobs within their corporate limits, whether such damage shall be the destruction of property or injury to life or limb: *Provided, however,* That the number of persons that shall constitute a mob under this act shall be five or more."

The plaintiff had the burden of proving, or for the purpose of a demurrer to the evidence, of producing substantial evidence under the rule announced in *Fry v. Cadle*, supra, that the group of officers which was together at the scene of the death of deceased was a "mob" within the meaning of G. S. 1949, 12-201.

What is a mob?

We dealt with that question in *Maus v. City of Salina*, 154 Kan. 38, 114 P. 2d 808. There we said:

"In interpreting the word 'mob' as used in the mob statute, we need to consider not only the dictionary and textbook definitions of the term, but also the theory and purpose that lie back of such enactments. In the Koska case it was said that the word is a vernacular rather than a strictly legal term and that it is reasonable to conclude that the legislature of 1858 used the word in its generally accepted meaning. What, then, is the popular understanding of the meaning of the word? It is perhaps impossible to fix exactly, by definition, the 'four corners' of the term, but its substantial content is well enough understood. When we think of a mob we instinctively visualize an assemblage of persons excited or incited to violent action, having thrown restraint to the winds, reckless and headlong in their unlawful designs, determined to brook no opposition to their common purpose, and ordinarily characterized by noisy and riotous disturbance of the public peace and order. Or, we think of a frenzied group, defiant of the orderly processes of punishment, moving in concerted action to wrest some alleged culprit from lawful custody and wreak vengeance upon him. Perhaps not every characteristic above enumerated is

present in every particular instance, but such is the general substance of the term as popularly understood."

The above definition was quoted and approved in *Hanners v. Kansas City*, 154 Kan. 324, 118 P. 2d 532.

Did the plaintiff produce substantial evidence that this group of officers contained the elements mentioned in the above definition?

But little would be gained by setting out in detail what happened this night in Kansas City that brought on the unfortunate affair. There was a little disturbance at a night spot in the city known as the Axhandle Tavern. Officers were called to stop the fight. When they arrived the deceased, who the plaintiff's evidence showed had been in the fight, and some friends, entered a Ford car standing near and locked the doors. An officer rapped on the car door and told the passengers he wanted to question them. Instead of the door being opened, the car sped away with the deceased in it. More officers arrived in response to a call so there were eight altogether. In a short-time deceased came along the street riding on a motorcycle. He was recognized by an officer and when told to halt, fled. Shots were then fired by the officers, one of which caused the death of deceased.

We are not confronted with a case of false arrest or of personal liability of a police officer for using unnecessary force. The question of the right of an officer to arrest without a warrant is not before us. In *Iola v. Birnbaum*, 71 Kan. 600, 81 Pac. 198, we said:

"The right to recover damages from municipalities on account of the acts of mobs is purely statutory, and whether it is affected by the want of power or opportunity on the part of the public officers to guard against the injuries done depends upon the terms of the statute by which it is conferred."

The sole question is whether under this evidence giving the plaintiff the benefit of all reasonable inferences and conclusions, the trial court should have submitted this case to the jury. To so hold would subject the city to liability every time four or more officers acted in concert to prevent what in their judgment constituted a breach of the peace. The legislature never intended any such result. None of the elements set out in the definition from *Maus v. City of Salina*, supra, were shown.

The judgment of the trial court is affirmed.